Good morning, Your Honors. May it please the Court. Suzanne Luban for Mr. Murillo, the petitioner. So I want to start first with King v. Roe. It's important to read that decision closely. It is a two-page per curiam decision. It does not say it's announcing a new test, although some of the cases following have treated it as such. But rather, King relied for its first prong on Biggs, which is in my Rule 20HA letter, and I apologize for not having cited that in my brief. But Biggs specifically says that if the petitioner has two completely separate rounds of habeas review, that the time between them is not told. But in that case, the Court specifically says that it's okay in a given round if multiple claims, some claims are added and some claims are subtracted. Now, King doesn't say that that's not okay. And, in fact, King relies on NINO, and I know Your Honor, Justice Chambliss are very familiar with that case, that stands for the proposition that exhaustion is such an important part of the habeas process that the Court does not want to damage the ability of petitioners to do that. So then it's not in so — Hemerly says, which is another case relying on King, says that King will often involve an incomplete or insufficient first petition that is corrected or embellished by the subsequent petition, which is what happened here in Mr. Murillo's case. And it's not until 2012 in Stankle where I believe that the Court goes astray from the holding of both of these cases, of King and of Hemerly, to say that — and the Court in Stankle misstates the ruling and the statement in Hemerly about what would be required in a case to involve King. Roberts, Counsel, could you help me with one factual detail? Sure. I overlooked, if any was there, the explanation for the 93-day delay between January 14, 2009, when the superior court denied the second petition, and April 17, 2009, when the appellant filed the petition in the California Court of Appeal. That's more than 30 to 60 days. And right offhand, I don't see what the explanation is that would make it all told. Your Honor, I'm not sure, actually. That wasn't one of the points that was focused on, and I would need to look back in my —    I don't have an explanation for that, Your Honor. I don't have an explanation for that, Your Honor. Well, so I'd like to address that, and also I'd like to reserve two minutes. So I'll look in my calendar. I have a timeline here, but I don't have an explanation for that. Thank you, Your Honor. But as to all of the other pieces of time that occurred, that transpired between the decisions and the next filings, Mr. Murillo does set forth — now we're on the second prong — of King, he does set forth reasons for his delay. And it's a little bit like the situation in Lott v. Mueller, where the Court says that multiple circumstances can sometimes all collect with a pro-perpetitioner. Only in this case, they seem to come seriatim. One after another, he's got — first, he can't — he can't get the files. And then when he finally gets the files from his attorney, he can't access the CD-ROMs. But yet he is told by prison officials that he may do so if he just waits a little longer and makes a certain kind of application. And then he goes through the prisons, you know, up the ladder of appeals to try to get access to the CD-ROMs. And I have the CD-ROMs now because I asked for them from the D.A. And there are 15 CD-ROMs. And so it's easy to see that he was not able to determine which one would be the perfect one to submit to this Court and — or to the Court that he was submitting it to, and also that there might be other material. And so just going back for a moment to the idea that he need not keep all additional claims out of his second and third petitions, that would go against the Court's requirement. And so the California courts require that. But doesn't that make it a new or different petition, though? That's the problem. I mean, even if you're led to put in additional claims, doesn't that deprive you of the opportunity to argue that it's in essence the same petition? Actually, Your Honor, no, I don't believe so. In the normal situation where there's not two successive petitions in a lower court like there were here, but where there's just one petition in superior court, then So what case best supports your argument that as long as it's a petition that's going to a higher level court, that adding new claims doesn't transpose it into a different petition? What case most strongly supports that argument? Well, Your Honor, the withdrawn opinion in Welch, which was Welch v. Newland, explicitly says that. In the Ombank opinion in Welch, that was no longer an issue. And so that was not really addressed. But in Neno, there's no requirement of that. And so Neno is But Neno has been undercut a bit by the Supreme Court, the subsequent involvements in Saffold and Carey v. Saffold. Well, if Because in Neno, our theory was you've got, there's no such thing as counting the gaps at all. That was our theory. Well, but in Neno, the Court talks about It hasn't been overruled, but I think it's king, and subsequently there, at least undercut the notion that you always get gap tolling. I would argue that it's been refined to address the issue of delay and diligence, to explicitly say that the petitioner must be diligent and that, but in California, that because delay may be explained, even 100 days, even 110 days is permitted in certain cases in California, by the California courts, where there is an explanation. And in this situation, he has made explanations that were supported by documentation and not refuted by the attorney general. Let me ask about a different part of the delay. His State sentence became final, and his statute of limitations under AEDPA started running at the end of January in 2007. He didn't file anything, didn't file any habeas petition in State court or Federal court until the end of January 2008. And as far as I can see, the only tolling claim in there is when he can't get his files for a little over a month of that year because he was being transferred between a bunch of jails or prisons. So it looks like even if he gets – even if we were to pull that time out, and I don't think we would under the current state of the law because he had plenty of time before and after, it's – he still burned almost all of his time in that first year. Well, Your Honor, I don't think that it's – that you can count the time before day 1 because – and he has a lot of documentation of his movements during that time as well, but of course, that – the days weren't being counted against him then. But he was being transferred all over the place. In the beginning, he had six months. The idea of a one-year statute of limitations is not, I was sick one day, so it's only 364 days. The idea of a one-year statute of limitations is, in a year, yeah, all kinds of contingencies come up, so you can't do something Tuesday and you can't do something the following month for two weeks, and all kinds of things come up. But if you've got a year, I don't see a good reason under either habeas statute of limitations law or general statute of limitations law for taking out a few weeks here or there when his – he doesn't have access to his files because he's moving. Well, that is actually the whole basis for equitable tolling. The question is whether it impaired his ability, but equitable tolling says that if there are times when he can't be working on it, that those are times that are not counted against him. And so from August – Even if I accept that proposition, I think there's only 37 days. Actually, it's from August 29th until October 4th. I think September 20th, but October 4th would be a little longer. He's transferred, yes, back to Kern Valley, and then two weeks at every location they're denied their files and held in a special area. And then they're put back in the general population after two weeks. And he did document that, but – so, I mean, that's another two weeks. And so right – like, for example, right before he's about to file in June, I guess, of 2009, his files are seized again. So that – in particular, that period of time, and that was noted in a supplemental brief, there's 11 days where he's ready to file, but he can't make copies because he doesn't have his file. And so he can't complete it. And so that's the type of thing that's happening all these times where he's being transferred, files are taken from him, he's put back in another different institution, and then two weeks passes, and then he's able to get his files. So for a whole big chunk of time, he's denied those files, and then periodically he's also without them. And so I did go through, I think, in the briefs and detail each specific time period, and I wish I had them all memorized. I have a lot of them on here, but – I think Judge Ronaldson had a question before. Oh, no, that's okay. All right. We'll give you two minutes for a follow-up. Thank you, Your Honor. Good morning. May it please the Court, Alicia Carlyle, Deputy Attorney General for Respondent. In this case, Petitioner waited 363 days before filing his first collateral attack on his conviction in State court. That was that year that I was asking your opposing counsel about? Yes. When that petition was denied, he again waited months between subsequent filings. No combination of statutory or equitable tolling is sufficient to make his petition timely. I'd first like to address statutory tolling. In this case, Petitioner doesn't meet either prong of the test set forth in King v. Roe. His second petition added several new claims and was not limited to elaboration of the ineffectiveness claim. By our count, he, in fact, added 11 claims to his second petition. Therefore, he was not entitled to tolling for the second petition. So what's your response to opposing counsel's argument that Petitioner's claim that as long as the successive petitions are to higher-level courts, additional claims may be added? I would make two points. First of all, this successive petition was not to a higher-level court. It was, again, to the superior court. Second, the settled precedent in this circuit under Stancil is that adding additional claims to a petition renders it a new round of new round of pleadings, and therefore a Petitioner who adds new claims is not entitled to tolling under King v. Roe. And that's published authority in this circuit. It has not been taken up on bunk and is binding on this panel. Second. So if the claim were – if the successive petition were made to a higher court, would you agree that the – that it doesn't matter if additional claims are added? You know, that is not something that we briefed, so I'm just – I'm not prepared to address that because these were petitions in the same court. And – Help me – help me on something in the law. We have such a long history of liberal tolling in the Ninth Circuit and then the Supreme Court taking a stout a peg on it. It's complicated reading our decisions, their decisions, seeing what's still good law and what isn't. In general statute of limitations law, say you have two years to file a tort suit for an auto accident, you don't get any equitable tolling because during three months of the first year you were for one reason or another disabled from filing. And I know that some of our cases read as though wherever there's some little chink where a person couldn't have filed, he gets tolling. I don't know what the current state of the law is on that. Does it matter? Is there any equitable tolling where there is a period of a few weeks or a month in the middle of the filing period, not at the very end so that you can't do your filing date, say you're hospitalized that day, but in the middle of it? What's the current state of the law on that? I believe Your Honor is correct that there has to be under Spitzen be more a causal connection. I couldn't hear some of the words. Under Spitzen v. Moore, there has to be a causal connection between the claimed impediment and the failure to file. Moreover, the cases that were cited by Respondent regarding statutory tolling, Lot v. Mueller. So the causal connection means that a few weeks out of the middle of your filing period did not cause the delay, is that it? Right. I mean, so I think in Lot v. Moore he was denied access or, sorry, Espinoza v. Matthews. He was denied access to his files for over 11 months of the 12-month EDPA statute of limitations. And similarly, in Lot v. Mueller, he was denied access the sort of final four months. So he, the final four months before the statute of limitations would have run. So there again was that causal connection between the impediment and the failure to file. Whereas here, as Your Honor noted, these, the transfers are occurring in, fairly early in the limitations period. I believe they're between September 2008 and October 2008. So four months before any statutory or any statute would begin to run. And here our position is there's just no causal connection between those. As to the second prong of King, Petitioner fails to meet the second prong of King as well, because the successive petition in the superior court, in addition to adding new claims, was untimely. It was filed more than four months after he received the file. Certainly he knew of the existence of the video, because it was a topic of conversation at the preliminary hearing, which he was at. And he made no attempt to get the video for two years after his sentencing in 2006, although he was aware that it existed. Finally, he claims that denial of access to library facilities was an excuse for his failing to file the second petition for such a long period of time. But Respondent notes that he was actually able to file the petition just by, I gather, looking at the labels on the CD-ROMs and guessing which one had the video that was in question. And he actually submitted his petition in November without having reviewed them. So certainly it was possible for him to have done that at an earlier date. So what you're saying is he didn't need access to the videos to file because, in fact, he filed without access to the videos. In fact, he did, yes. And in fact, one of the video or one of the CD-ROMs. But then he lost because he didn't file the video. Yes, Your Honor. And so he filed the video with his second successive petition. It was reviewed by the superior court, who found that it didn't really show anything one way or the other. So there's no reason that that couldn't have happened sooner. I think the video was, it was supposed to be a surveillance video that would show that he didn't mean to shoot the liquor store clerk. The clerk made him pull the trigger by hitting him with a cattle prod. That was his contention. And the superior court's order or opinion on denying the second habeas specifically noted it slowed down the video and went through it frame by frame. And it was sort of six of one, half of this and the other. It was really difficult to tell what was going on. And certainly didn't clearly establish his version of events. It sounds kind of like that would have come up in front of the jury at his trial on the merits. I mean, possibly. Did it? And no, he pled.  I'd forgotten. Yeah, he pled. And, you know, that could have very well been part of his counsel's calculation. Did he plead to – I can't remember anymore. Did he plead to intentionally shooting the clerk? Yes. And now he's saying my lawyer messed up. I apologize. One question. He pled to several counts of robbery and then an enhancement under California law for personal use of a firearm and personal discharge of a firearm, which is what increased his penalty. Right. So he wants to – he would like to eliminate the enhancement. Yes. That's his primary claim. Finally, we note that even if Petitioner is entitled to tolling, pending receipt of the file for his counsel, he's only entitled to tolling once he requested that file. So 363 days run, he files his first petition. That's denied on March 14, 2008. He then waits 15 days after receiving the court's denial of his petition. Remember, he only has two days left at this point before he even contacts his counsel. So Respondent's position is that the statute of limitations ran before he even contacted his counsel to receive the file. If the Court finds that it didn't run at that point, our position is that, as Judge Kleinfeld noted, that it ran in the 93-day gap between the second denial by the superior court and the next petition in the Sixth District Court of Appeal. If the Court finds that there's tolling there for some reason, even though it's well known, we note that he waited 83 days between the denial in the Sixth District and filing in the Federal court. So under no combination of statutory or equitable tolling is Petitioner's Federal habeas petition timely, and the district court correctly dismissed it. If the Court has no further questions. Roberts, thank you. Thank you. We'll put on two minutes. Just a few points. So this is an IAC claim. That's the basis of his habeas claim. And he did document that as soon as he received the order from the first superior court decision, his mother contacted the attorney and tried several times to reach the attorney, and the attorney gave her a message saying, I don't have time to deal with this. That's in one of his – that's in the reasons for delay in his second petition. And so that – then he wrote the letter. So actually, he's making efforts from the moment he learns that he needs to provide this video. And before that, just like in some of the other cases where – But he's making efforts if his mother contacted the attorney. Attorneys – there's no attorney-client privilege between the lawyer and the mother. So criminal defense lawyers are often kind of wary of talking to parents. But we're talking about, is he being diligent? Is he making efforts to try and get the file? And normally, if the – I don't know if he told his mother to. If his mother is asking for the file, then as an attorney, what I would do is I would write, and he would say – send me a letter back saying – or I would put a call to the institution, which is very easy to do, an attorney call, and for two minutes ask him, and then put the file in the mail. So – and also, I note that the district court gave him time, equitable tolling time, for getting the file, but only until the lawyer sent it, which doesn't help the client until he receives the file. So really, the date that he received it is when he should have gotten the equitable tolling until. And also, I just wanted to note that before that, he didn't know that the video would be required for his petition to be heard. And in fact, the court could have demanded that the DA produce the CD ROMs. It's kind of – I wouldn't know. I mean, you rob a liquor store nowadays, you pretty much know there's going to be a surveillance camera. That's why people wear masks. Well, you know, I watched the video. And actually, I disagree with opposing counsel. It seems very clear that as – that if this had been shown at the suppression hearing, his motion would have been granted, or I guess it was at the preliminary hearing to find whether he had the intent in discharging the gun, because there are – there's evidence in the file of burns on the defendant that the officers refused to photograph that would have supported his position. And so that's his destruction of evidence argument. But so you see behind the desk the two clerks, and one of them is approaching and reaching underneath the counter. It's a very disturbing video. Pulls out the – it's a taser gun. And he climbs up over the counter and is leaping off the counter. So he hasn't been shot yet. He's in full possession of his faculties, and he needs to make contact or get close to the defendant in order to fire the taser gun. And then the defendant kind of falls to the ground. So you see that he has – while the clerk is still in good shape, he – the other guy falls to the floor. And that's when he fires the gun. So we don't have audio on it, but it's pretty apparent. And I think that that's why, when that was not proposed, it was intended to be shown. Boy, that would have been great for a jury. Yes. It would have been a great argument. But so that's the point of the IAC argument, is his lawyer convinced him that he wouldn't have a chance. And by failing to produce that video when it was already lined up, it was cued up on a machine, and then things got busy, and somehow the defense attorney just didn't follow through. You know, I think the tough – the tough issue for you in terms of gap tolling is the filing of the habeas in the superior court rather than in the court of appeal. How do you deal with that? Doesn't that take it out of our – our gap tolling cases? Again, Your Honor, under King and cases following that, the belief is that if somebody is correcting a deficiency, and that's the important part of the King prong one, is if the second petition to the same court is attempting to correct a deficiency that has been highlighted by that judge, saying this is without prejudice to be refiled in my court, basically, he's inviting the – you know, and that is really when people are not educated, they're going to follow what sounds like they ought to do next. And people are, I think, under the belief that they need to be filing in the superior court first. So your view is that basically we should treat this almost as an amended plea rather than a new plea? That's correct. That's correct. And just back on the point of that you can add claims, if you were going to the next level, I believe that I could submit to the court additional authority that he would be allowed to add claims, add and subtract claims. Well, certainly. If you're filing a new petition, you can add claims. Because every petition – I'm sorry, Your Honor. If he had taken an appeal from the habeas, I'm not sure he can add new claims. But if he's filing a whole new petition, certainly. And I would submit that he can do it, yes. And because every – there's a case law that says every petition in California only, because it's an original petition. We have those strange rules here. Okay. Any further questions? Thank you for your argument. Thank you very much. The case just heard will be submitted for decision.
judges: Kleinfeld, Thomas, Rawlinson